COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



ARCHIE MORENO,

                            Appellant,

v.

M.V., M.D. AND A.M., M.D.,

                            Appellees.

§

§

§

§

§

No. 08-03-00476-CV

Appeal from the

120th District Court

of El Paso County, Texas

(TC# 97-1281)




O P I N I O N

           This is an appeal from the granting of a directed verdict against Appellant, Archie
Moreno, in favor of all defendants below. Suit was originally filed by Appellant against
Appellees seeking damages related to the medical treatment received by Appellant at
Columbia Medical Center-East, as provided by Appellee physicians. Appellant presented
himself to the emergency room at Columbia Medical Center-East suffering from
abdominal pain. The Appellee physicians provided an initial evaluation and subsequent
care. Appellant ultimately underwent abdominal surgery and was diagnosed with a
ruptured appendix. Appellant claims that he suffered complications related to the delay in
the diagnosis of appendicitis and delay in surgery, for which he sued. After Appellant
completed the presentation of his evidence, all Appellees moved for a directed verdict in
favor of each Appellee. The trial court granted each Appellee’s motion. Appellant
appealed the granting of the directed verdicts against the Appellee doctors only. For the
reasons stated, we affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           In his Fourth Amended Petition filed March 5, 1998, Appellant herein filed suit
against Columbia Medical Center-East, Murray Vann, M.D. and Ascencion Mena, M.D.,
complaining about the medical care he had received at the defendant hospital and
provided by the defendant physicians. On August 25, 2003, the parties proceeded to trial
before a jury. After the plaintiff’s case-in-chief, each defendant moved for a directed
verdict on the claims asserted by the plaintiff. The trial court granted the directed verdicts
and entered a judgment in favor of each defendant below.
           Appellant appeals only from the judgments entered in favor of the physician
defendants and has presented us with a limited record on appeal. Appellant raises two
issues complaining that the “trial court erred in granting Appellees’ Motion [sic] for
Directed Verdict because the evidence raised fact issues as to a breach of the standard of
care” and contending that “the trial court erred in granting Appellees’ Motion [sic] for
Directed Verdict as a material fact issue exists as to causation” as to both Appellees. We
note that Appellant has come forward with a reporter’s record that presents only the
testimony of Appellant’s physician expert witness, Dr. Terry Simpson, and the post-trial
motions. The only exhibit included in the reporter’s record is Dr. Simpson’s curriculum
vitae. Similarly, Appellant only requested that a partial clerk’s record be included on
appeal.
           The substantive facts are not disputed by the parties. Appellant arrived at the
emergency room at Columbia Medical Center-East on the evening of April 16, 1995
complaining of abdominal pain, nausea, and vomiting. Appellee, Ascencion Mena, M.D.
(Dr. Mena) was the first physician in the emergency room to have contact with Appellant. 
Appellant had a history of kidney stones and presented symptoms consistent with a
kidney stone. Dr. Mena ordered an extensive workup of Appellant’s complaints that
included tests that evaluated other potential problems as well. Appellant’s expert witness
testified that the tests ordered by Dr. Mena were appropriate and the examination
performed by Dr. Mena was thorough. After completion of the examination, Dr. Mena
recommended that Appellant be admitted to the hospital and referred him to the care of
Dr. Murray Vann (Dr. Vann), a urologist who specializes in the treatment of kidney
stones. Appellant’s expert testified that this decision was appropriate. Appellant’s
expert’s criticism of the treatment provided by Dr. Mena “simply is that he didn’t consult
the general surgeon when he had a patient that came in with a constellation set of
symptoms which could not rule out appendicitis.”
           Appellee Dr. Vann, a urologist, admitted Appellant to the hospital after midnight
on April 17, 1995. Dr. Vann examined Appellant and did not find any symptoms that
were inconsistent with a kidney stone or which alerted him to the existence of
appendicitis. As confirmed by Appellant’s expert, Appellant lacked the classic symptoms
of appendicitis. While in the hospital on the afternoon of April 18, 1995, Appellant had a
significant change in his symptoms. Dr. Vann requested that Dr. Antonio Davalos, a
general surgeon, be consulted regarding the Appellant’s condition. Dr. Davalos examined
Appellant in the early evening of April 18, 1995. He found that Appellant had peritonitis,
or an infection and inflammation of the abdomen which required immediate surgery. 
Surgery was performed within an hour of Dr. Davalos’s consultation. Prior to the
surgery, Dr. Davalos had diagnosed the patient with acute abdomen but did not
specifically diagnose appendicitis. Appellant’s expert had no criticism of the care
provided by Dr. Davalos. Appellant developed post-operative complications that
included sepsis and wound infection. He remained in the hospital for a total of nine days.
II. DISCUSSION
A. Standard of Review
           In two issues, Appellant asserts that the trial court erred in granting a directed verdict
in favor of all defendants because there was sufficient evidence presented to raise a fact issue
as to a breach of the standard of care and as to causation.
           In reviewing a directed verdict, we examine the evidence in the light most favorable
to the party suffering the adverse judgment and disregard all contrary evidence and
inferences. S.V. v. R.V., 933 S.W.2d 1, 8 (Tex. 1996); Qantel Bus. Sys. v. Custom Controls
Co., 761 S.W.2d 302, 303-04 (Tex. 1988); McIntyre v. Smith, 24 S.W.3d 911, 914
(Tex.App.--Texarkana 2000, pet. denied). If there is any conflicting evidence of probative
value which raises a material fact issue, then the judgment must be reversed and the case
remanded for the jury’s determination of that issue. Szczepanik v. First S. Trust Co., 883
S.W.2d 648, 649 (Tex. 1994); Qantel, 761 S.W.2d at 304; McIntyre, 24 S.W.3d at 914; see
also Campos v. Ysleta General Hosp., Inc., 836 S.W.2d 791, 793 (Tex.App.--El Paso 1992,
writ denied). When reasonable minds may differ as to the truth of controlling facts, the issue
must go to the jury. McIntyre, 24 S.W.3d at 914; Phippen v. Deere and Co., 965 S.W.2d
713, 719 (Tex.App.--Texarkana 1998, no pet.). On the other hand, where no evidence of
probative force on an ultimate fact element exists, or where the probative force of slight
testimony is so weak that only a mere surmise or suspicion is raised as to the existence of
essential facts, the trial court has the duty to instruct the verdict. McIntyre, 24 S.W.3d at 914;
Facciolla v. Linbeck Constr. Corp., 968 S.W.2d 435, 440 (Tex.App.--Texarkana 1998, no
pet.); Campos, 836 S.W.2d at 793-94.
           Such a determination requires us to consider only the evidence that favorably supports
Appellant’s position. All contrary evidence and inferences are to be disregarded. Campos,
836 S.W.2d at 793; Valdez v. Lyman-Roberts Hosp., Inc., 638 S.W.2d 111, 114 (Tex.App.--Corpus Christi 1982, writ ref’d n.r.e.).
           To prevail in any medical negligence cause of action, the trier of fact must be guided
by the opinion testimony of experts. Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex. 1966); 
McIntyre, 24 S.W.3d at 914-15. Through this expert testimony, the plaintiff must prove: 
(1) a duty by the physician to act according to a certain standard of care; 
(2) a breach of that standard of care; 
(3) an injury; and
(4) a causal connection between the breach of care and the injury. 
McIntyre, 24 S.W.3d at 914; McCombs v. Children’s Med. Ctr. of Dallas, 1 S.W.3d 256, 259
(Tex.App.--Texarkana 1999, pet. denied).
           It is well established that the threshold question in a medical malpractice case is the
standard of care. McIntyre, 24 S.W.3d at 914; Hammonds v. Thomas, 770 S.W.2d 1, 1
(Tex.App.--Texarkana 1989, no writ). That standard must first be established so that the fact
finder can determine if the doctor’s conduct deviated from the standard to the degree that it
constituted malpractice. McIntyre, 24 S.W.3d at 914; Hammonds, 770 S.W.2d at 1-2. It is
not sufficient for a medical expert to simply state that he knows the standard of care and to
then draw a conclusion as to whether that standard was met. Rather, the expert must
explicitly state the standard of care and explain how the defendant’s acts met or failed to
meet that standard. McIntyre, 24 S.W.3d at 915; Whittley v. Heston, 954 S.W.2d 119, 122
(Tex.App.--San Antonio 1997, no writ); Chopra v. Hawryluk, 892 S.W.2d 229, 233
(Tex.App.--El Paso 1995, writ denied).
B. Discussion of the Evidence
           An analysis of both issues in light of the above standard of review reveals two
dispositive issues on appeal. Appellant has asserted that he has raised a fact issue as to the
negligence of the physician Appellees for medical malpractice with regard to their failure to
timely consult a general surgeon to rule out a diagnosis of appendicitis. The second issue
asserts that Appellant has produced evidence to show that his injuries were proximately
caused by the Appellees’ failure to diagnose appendicitis and remove the appendix before
it ruptured.
           Because this case involves allegations of medical malpractice, we must evaluate the
evidence in light of the burden of proof required to prove medical malpractice. In a medical
malpractice case, the plaintiff must prove, by competent testimony, that the defendant’s
negligence proximately caused the plaintiff’s injury. Hart, 399 S.W.2d at 792; Bowles v.
Bourdon, 148 Tex. 1, 5, 219 S.W.2d 779, 782 (1949). Additionally, and of great importance
in this case, the plaintiff must establish a causal connection beyond the point of conjecture;
proof of mere possibilities will not support the submission of an issue to the jury. Duff v.
Yelin, 751 S.W.2d 175, 176 (Tex. 1988); Lenger v. Physician’s Gen. Hosp., Inc., 455 S.W.2d
703, 706 (Tex. 1970).
           The record on appeal consists only of the testimony of Appellant’s physician expert
witness, Dr. Terry Simpson. Dr. Simpson repeatedly asserted that his only criticism of the
physician defendants was that they did not immediately consult a general surgeon to rule out
appendicitis. Specifically, with regard to Dr. Mena, Dr. Simpson testified that “the criticism
simply is that he didn’t consult the general surgeon when he had a patient that came in with
a constellation set of symptoms which could not rule out appendicitis.”
           There is no dispute that Appellant presented to the emergency room of the defendant
hospital on the evening of April 16, 1995 with general, non-specific symptoms of
temperature, tenderness, and general abdominal pain and a history of kidney stones. Dr.
Simpson confirmed that Dr. Mena did an extensive workup in the emergency room and a
thorough evaluation of Appellant’s complaints. He also acknowledged that Dr. Mena did a
workup that included tests that were not related to the patient’s history of kidney stones and
specifically included the evaluation of other potential problems. He had no criticism of the
tests requested and Appellant did in fact have a kidney stone. Dr. Simpson also confirmed
that the symptoms of a kidney stone can be identical to the symptoms of appendicitis. He
also confirmed that it was appropriate for Dr. Mena to admit the patient into the hospital
under the care of Dr. Vann for treatment of the kidney stone. Dr. Mena had no further
responsibility for the care or treatment of Appellant after he was admitted to the hospital. 
Dr. Simpson also testified that Appellant had a significant change in his symptoms and his
clinical presentation on the afternoon of April 18, 1995.
           Dr. Simpson’s criticism of Dr. Vann is also limited to his failure to consult a general
surgeon earlier in the patient’s treatment. Dr. Simpson repeatedly testified that he considered
Dr. Vann’s assessment of Appellant’s condition as “elegant” and thorough. He
acknowledged that Dr. Vann evaluated Appellant’s condition and considered other potential
problems, not just the confirmed kidney stone. Dr. Simpson confirmed that a diagnosis of
a kidney stone does not necessarily require the consultation of a general surgeon and that the
patient did not present with the classic symptoms of appendicitis.
           Dr. Simpson confirmed that the defendant physicians did not cause the appendicitis,
did not cause it to rupture, and did not cause the Appellant to undergo surgery. He also
confirmed that the appropriate type of surgery was an exploratory laparotomy rather than
laparoscopic surgery because of the type of symptoms presented. Significantly, on cross-
examination, Dr. Simpson testified that medicine is not an exact science and that reasonable
medical minds can come to different conclusions about a diagnosis and a course of treatment
for a patient. He acknowledged that reaching a different conclusion is not negligence nor
below the appropriate standard of care. Further, he acknowledged that in the past, he had
been wrong in his initial assessment of a patient, had in fact seen patients with abdominal
pain and not immediately operated, and had waited a day or two and operated to find a
ruptured appendix. This process was, in his opinion, not negligence nor below the standard
of care. Dr. Simpson also testified that in about 40 percent of the cases, the appendix is not
located in the normal location and a patient may present with atypical symptoms. He
confirmed that in this case, the patient’s symptoms were consistent with a variety of intra-abdominal problems.
           Once the patient’s condition changed, a general surgeon was consulted. The general
surgeon diagnosed the patient with “acute abdomen” for which the appropriate treatment was
exploratory surgery to address the problem. Notably, the general surgeon did not diagnose
the appendicitis until after the surgery had occurred. Reviewing this testimony as a whole
does not establish that the diagnostic process followed by the Appellee physicians was in fact
deficient in any way or failed to meet the appropriate standard of care. We overrule
Appellant’s Issue One.
           Appellant also asserts that he has presented evidence of causation of his injuries. As
stated previously, there is no question that the physicians did not cause the appendicitis, the
rupture, or the need for surgery. Appellant’s contention is only that the complications he
suffered were caused by the physicians’ negligence. Dr. Simpson testified that he had no
criticism of the way that the general surgeon had performed the surgery and that open surgery
was appropriate. Further, he acknowledged that an operation on a non-ruptured appendix or
a normal appendix may result in a wound infection and have complications though the rate
is higher for a ruptured appendix. Significantly, he presented no evidence to support
Appellant’s contention that the medical complications would not have occurred but for the
actions of the Appellee physicians. To the contrary, the only evidence presented was that the
type of complications that Appellant suffered may occur after removal of a non-ruptured
appendix and that with an earlier consultation and surgery, Appellant “most likely would not
have had a wound infection.”
           Dr. Simpson’s testimony amounted to, at most, speculation that if the surgery had
been performed earlier, Appellant might not have suffered from the complications of sepsis
and wound infection. Speculation on the part of an expert does not create evidence of
negligence or the violation of a standard of care. Dr. Simpson’s testimony is precisely the
type of 20/20 hindsight analysis which does not provide a factual basis for evidence of
negligence in the standard of care for the treatment of Appellant or any evidence of causation
of Appellant’s injuries. Opinion testimony based upon conjecture or speculation lacks
probative value and does not support a finding of medical malpractice. See Williams v.
Gaines, 943 S.W.2d 185, 193 (Tex.App.--Amarillo 1997, writ denied). We overrule Issue 
Two.
           Applying these settled principles of law to the facts of this case, it is clear that the trial
court correctly granted the instructed verdict in favor of both physician defendants. We
overrule both Appellant’s issues.
           Having overruled Appellant’s issues on review, we affirm the judgment of the trial
court.
                                                                  RICHARD BARAJAS, Chief Justice
July 14, 2005

Before Barajas, C.J., McClure, and Chew, JJ.